SAMUEL, Judge.
Plaintiffs, Marshall Hinchman, president and sole owner of/and Hinchman Electrical *552 Contract Maintenance Corporation, instituted this suit for the balance due for. extras for electrical work at the Colonial Sugar Refinery at Grammercy, Louisiana, and for damages to their professional standing and credit rating.
Named defendants were Litton Systems, Inc. and Colonial Sugars-Borden Food Division of Borden, Inc. (The latter defendant was subsequently dismissed on an exception of no cause of action on the ground that plaintiffs were not parties to the construction contract between Litton and Borden.)
An intervention was filed by the Bank of St. Charles and Trust Company, as holder of a pledge by plaintiffs, for recognition of its pledge rights.
Litton filed exceptions of no cause or right of action and answered in the form of a general denial. Following a trial on the merits judgment was rendered in favor of Litton, dismissing plaintiffs’ demands, alternatively maintaining Litton’s exceptions, and dismissing the Bank’s intervention. Plaintiffs have appealed.
The record reveals the following facts: Litton contracted with Borden to install a palletizer system and related conveyor at the Colonial refinery. On March 16, 1973 Litton subcontracted the electrical portion of the work to the Hinchman corporation on its low competitive bid of $32,386.15. The contract provided the work was to be completed within 90 days, and that all changes in the scope of the work were to be made or confirmed in writing.
Extra work not contemplated in the original contract was performed and Hinchman was paid an additional $7,758.58, and took nine months to do the job. (According to Hinchman the extra work amounted to $55,409, which Litton refused to pay.)
As a result of the time it took to complete the contract plaintiffs’ costs for labor and overhead escalated, causing him financial problems at the bank, and for all practical purposes putting him out of business, subjecting him to seventeen law suits by the bank, and resulting in an IRS tax lien.
It is plaintiffs’ position that these misfortunes are the fault of Litton in: (a) causing delays which prevented prompt performance of the contract; (b) issuing change orders verbally instead of in writing, and then refusing to pay for the same; and (c) inducing plaintiff to make a bid based upon misrepresentation. As a result of the above allegations plaintiffs ask for release from their original contract and payment on a cost basis or, alternatively, quantum meruit.
Relative to appellants’ first contention, the delays of which they complain were due principally to obstructed working areas. They contend the floors were torn up and the aisles blocked during the entire working period. This contention is not born out by the evidence. While the aisles may have been blocked by stored sugar at times, Colonial cooperated by moving the sugar when its location created problems.
Plaintiffs knew, or should have known, they were to perform the work at an operating refinery, that the ordinary work in the refinery would continue, and that the refinery certainly would not close down for 90 days while a $32,386.15 contract for electrical work was being performed. And it appears to us much more likely that the delay in performance was due to the fact that plaintiffs’ original crew of experienced electricians returned to their original jobs at Shell Oil Corporation Refinery when that company’s employees went back to work after they had been out on strike, and plaintiffs had to hire inexperienced and less competent help.
Relative to appellants’ second contention, we find insufficient evidence to support an award for extras allegedly unpaid at this time. Hinchman received $7,758.58 for extra work not covered by change orders over and above the contract price, including payment for additional materials, labor and delays in completing the job. Hinchman asks to recover for an additional 4775 man hours representing extra work or lost time. However, they admit these employees were not paid for any hours that were lost because they could not work on the project. Hinchman claims they still had “overhead”, but this is not the responsibility of the defendant.
*553 We also conclude there is no merit in appellants’ contention, that their bid was made upon false representations. Plaintiffs’ estimator knew the work was to be performed while the refinery was in full operation and that the contract was for a fixed price, and open to bids. It is unfortunate that the bid was unrealistically low, but that is not the fault of Litton.
There is no basis for us to set aside the original contract and require that appellants be paid on a cost basis or in quantum meruit. Any damages Hinchman and/or his corporation suffered as an unfortunate result of this contract appear to have been caused by their own inadequate bid and substandard performance.
Based upon Hinchman’s pledge to the Bank, Litton filed an exception of no right or cause of action at the close of plaintiffs’ case. The thrust of these exceptions is that the proper party plaintiff is the Bank, and that Hinchman has no right to sue Litton under the contract. As we have said, the trial court judgment alternatively maintained these exceptions and dismissed plaintiffs’ suit. Because we decide this matter on the merits in favor of defendant, our consideration of the exceptions is unnecessary.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.